## DEPARTMENT OF REVENUE, Commonwealth of Kentucky, Appellant,

### v.

## STITZEL–WELLER DISTILLERY (a Kentucky Corporation), Appellee.

Court of Appeals of Kentucky.

Nov. 20, 1964.

Rehearing Denied March 26, 1965.

William S. Riley, Robert J. Rieckhoff, Paul D. Ross, Dept. of Revenue of Kentucky, Frankfort, for appellant.

Millard Cox, Louisville, for appellee.

WADDILL, Commissioner.

In this action for a declaration of rights we are asked to determine whether the tax imposed by KRS 243.680(1) is applicable to the manufacture of distilled spirits to be exported. This statute provides:

"No person shall manufacture distilled spirits in this state unless he first obtains from the department a permit

to engage in the business of manufacturing distilled spirits. At the time of the issuance of the permit he shall pay to the state a tax of ten cents for each proof gallon of distilled spirits for which the permit is issued."

The stipulation of facts which the parties filed shows that: The appellee, a licensed manufacturer of distilled spirits, is negotiating a contract to manufacture fifteen (15) barrels of bourbon whiskey for a customer in Mexico; that this whiskey, when manufactured, will be drawn off into barrels identified for export in compliance with 26 CFR 252.103; that the whiskey when manufactured will be entered into appellee's Class 6 U.S. Customs Bonded Manufacturing Warehouse (26 U.S.C. § 5521 (1959)), and that appellee is unable to complete its contract negotiations since it is unable to determine whether it is liable for payment of this tax.

The trial judge recognized that Congress has established a scheme whereby certain products, such as whiskey, may be relieved of local taxes so as to meet foreign competition. He assumed that the whiskey in the instant case would be exported subject to the strict control of the federal government from the time of production until exportation, and he concluded the levy of this tax would be an infringement of the congressional regulation of commerce under the Federal Constitution. Judgment was accordingly entered.

Appellant contends that since KRS 243.680(1) has been held to be an occupational tax (Brown-Forman Distillers Corp. v. Commonwealth of Kentucky, Ky., 346 S.W.2d 752), its incidence is on the privilege of manufacturing which precedes the time when the tax immunity of the Federal Constitution attaches. Appellee asserts that this whiskey will be committed to be exported from the time it is produced and may not be constitutionally taxed by Kentucky.

■ The applicable test was enunciated in Empresa Siderurgica S.A. v. County of Merced, 337 U.S. 154, 69 S.Ct. 995, 93 L. Ed. 1276, as follows:

"* * * The tax immunity runs to the process of exportation and the transactions and documents embraced in it. * * *. It is the entrance of the articles into the export stream that marks the start of the process of exportation. Then there is certainty that the goods are headed for their foreign destination and will not be diverted to domestic use. Nothing less will suffice."

■ When goods are under federal supervision from the inception of their manufacture until delivery to a common carrier for export, they are not subject to state taxation (McGoldrick v. Gulf Oil Corp., 309 U.S. 414, 60 S.Ct. 664, 84 L.Ed. 840) and if the incidence which gives rise to the accrual of the tax is a step in the export process, the levy is unconstitutional (Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80).

■ In the instant case the stipulated facts nowhere state that this whiskey will be produced in a bonded manufacturing warehouse. Moreover they show that the whiskey will be manufactured and "drawn off" before it is placed in such bond. We conclude that this whiskey will not be committed with certainty to the stream of exportation until it has been segregated from a common mass of distilled spirits and placed under federal supervision in a Class 6 Bonded Warehouse. Therefore the incidence of the tax imposed by KRS 243.680 (1) has not been shown to be a step in the process of exportation and the tax may be collected from appellee.

The judgment is reversed with directions to enter a new one approving the collection of the tax imposed by KRS 243.680(1).

MOREMEN J., with whom MILLIKEN, C. J., joins (dissenting).

The opinion suggests that the only whiskey which may be exempt from the produc-

tion tax under subsection (1) of KRS 243.-680 must be produced and manufactured within the physical boundary and confines of a Class 6 U. S. Customs Bonded Manufacturing Warehouse. (I doubt very much if any distiller within this state has a still in a Class 6 Warehouse or a Bonded Warehouse of any nature; the still house is usually in a separate building.) The opinion, however, holds that if the whiskey is not produced under such unusual circumstances, it has not been committed with certainty to the stream of exportation. I cannot understand why the particular spot of production has such importance. Under subsection (2) of § 5002, Title 26 U.S.C. it is required that the entire premises be bonded, and the bonded premises are subjected to rigid federal control.

It appears that the most important thing should concern whether a distiller has committed with certainty 15 barrels of whiskey to specific export trade—otherwise we are concerned only with security measures. There is no more likelihood that goods will be diverted to domestic use from a bonded Class 6 Warehouse than from the bonded premises of the entire unit which is also highly policed. It will be remembered that as soon as whiskey is drawn off, it is placed in specially marked barrels and immediately taken to the Class 6 Warehouse. As soon as it comes into being as raw spirits, it is marked and on its way to a foreign land.

I believe that the covenant and promise of the distiller has greater significance than the physical property of the plant. It is plain from the letter of intent which is made a part of the complaint that appellee requested the issuance of a tax free permit from the state for the manufacture of fifteen barrels of whiskey. It follows that when that fifteen barrels of whiskey are produced and come into being they are immediately committed to specific export trade under the terms of the letter. If there is any diversion thereafter, there are sufficient sanctions, both state and federal, which may be applied. It is a matter of common knowledge—at least in this state—that the manufacture and storage of distilled spirits are subject to strict control of the federal government during the period of its manufacture and transportation to the warehouses and, for that matter, thereafter. In addition, under 26 U.S.C. § 5521 et sequitur, the manufacturer must execute satisfactory bonds for the faithful observance of all provisions of federal law and regulations promulgated thereunder.

It is apparent from the facts stated in the majority opinion that the distiller has covenanted to comply with all laws and regulations as to identification and storage. The only flaw the majority opinion finds with the proposed plan is that the entire manufacturing process did not take place within a Class 6 Warehouse. Such a holding, I believe, is beyond the spirit and intent of the constitution and federal statutes and regulations. I am convinced that under the facts the 15 barrels of whiskey which will be ultimately produced under a permit granted under subsection (1) of 243.680 (whether tax free or not) are definitely committed to exportation from the beginning of the distillation process.

We, therefore, respectfully dissent.